UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES A. CRAMER,<br><br>    Plaintiff,<br><br>    v.<br><br>CHERYL A. GALBRAITH, et al.,<br><br>    Defendants. | Case No. 18-cv-01700-VC   (PR)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 33, 37 |

    Plaintiff James A. Cramer, an inmate at California State Prison Solano, filed this complaint under 42 U.S.C. § 1983 against former and present employees at Pelican Bay State Prison, where Cramer was previously incarcerated. The Court reviewed Cramer's amended complaint and found, liberally construed, the allegations appeared to give rise to cognizable due process and negligence claims against G.M. Ater, Former Pelican Bay Program Administrator, C.A. Galbraith, Former Pelican Bay Classification Counselor II, and P.D. Bush, Former Pelican Bay Classification Counselor I. The Court also construed the complaint as giving rise to a cognizable retaliation claim against T. Schwartz, Former Pelican Bay Associate Warden. *See* ECF No. 6. These claims arose from an incident in 1994 when Cramer appeared before a Unit Classification Committee ("UCC") which issued a 128-G chrono[1] containing the false notation, "the UCC notes Cramer is a Northern Structure (NS) dropout," and this notation was placed in Cramer's Central File. The defendants filed a motion to dismiss, which the Court granted in part. The Court dismissed as untimely the due process claim for injunctive and declaratory

---

[1] A CDC Form 128 chrono is used by prison officials to document information about inmates and inmate behavior. 15 Cal. Code Regs § 3000 (Definitions).

relief, the negligence claim and the retaliation claim. *See* ECF No. 29. The only remaining claim in this case is the due process claim against Ater, Galbraith and Bush.

The defendants argue that they are entitled to judgment on the due process claim on the following grounds: (1) Cramer failed to exhaust administrative remedies; (2) the complaint is untimely; (3) Cramer does not have a liberty interest in the accuracy of his Central File; (4) Cramer received all the process he was due; and (5) the defendants are entitled to qualified immunity. The defendants also move for an extension of time to file their reply to Cramer's opposition, which is granted. For the following reasons, the motion for summary judgment is granted on the ground that the due process claim is unexhausted.

## BACKGROUND

In September 1994, after Cramer's transfer to Pelican Bay, he appeared before the Pelican Bay UCC for his initial classification. Duan Dec., Ex. M, ECF No. 33-5 at 49. Following the UCC hearing, Bush generated Cramer's 128-G chrono, dated September 13, 1994, which contained the notation, "the UCC notes Cramer is a Northern Structure (NS) dropout." *Id.* The NS is a prison gang. The parties agree that this notation is false and that it was improperly placed in Cramer's non-confidential Central File.

Bush's standard practice was to send each inmate the chrono generated after that inmate's UCC hearing and he believes he acted consistently with this practice in delivering the September 13, 1994 128-G chrono to Cramer. Bush Dec. ¶ 4. Cramer states he did not receive the chrono and speculates that it was sent to a different inmate with a similar name. Opp. at 12, ECF No. 35-1 at 4.

Cramer states that he did not know about the "NS dropout" notation in his Central File until September 2014 when he checked his Central File for information to challenge the prison's decision to validate him as a member of a prison gang. Duan Dec., Ex. L, Cramer Depo. 26:21-25, ECF No. 33-5 at 27; Opp. to MTD at 3, ECF No. 21 at 3. At some point, a prison employee attached a note to the "NS dropout" notation in Cramer's Central File stating, "A review of this file does not indicate Cramer is a dropout or ever has been a dropout of the NS Prison gang. It

would appear this information is incorrect." Duan Dec., Ex. K, ECF No. 33-5 at 19.

## LEGAL STANDARD

### I. Summary Judgment Based on Failure to Exhaust

The Prison Litigation Reform Act provides, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

The PLRA requires "proper exhaustion" of administrative remedies. *Id.* at 93. To meet this standard, prisoners must not only lodge a formal complaint, but also pursue it through each stage of the administrative process in "compliance with an agency's deadlines and other critical procedural rules" as a precondition to suing in federal court. *Id.* at 90. A grievance does not need to articulate a legal theory, but it must alert the prison to the nature of the wrong for which redress is sought. *McCollum v. California Dep't of Corr. & Rehab.*, 647 F.3d 870, 876 (9th Cir. 2011).

Procedurally, failure to exhaust under the PLRA is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In the Ninth Circuit, a motion for summary judgment is the proper vehicle to decide whether a prisoner has exhausted administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (*en banc*). A defendant has the burden to prove that there was an available administrative remedy and that the prisoner did not exhaust it. *Id.* at 1172. Once the defendant meets that burden, the burden shifts to the plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* A plaintiff must prove that he took reasonable and appropriate steps to exhaust and was precluded from exhausting, not through his own fault, but by the fault of prison officials. *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010).

To determine the issue of exhaustion, all the facts in the record must be viewed in the

light most favorable to the non-moving party.  *Albino*, 747 F.3d at 1173 (citing *Liberty Lobby*, 477 U.S. at 247-50).   Exhaustion should be decided, where feasible, before the merits of a prisoner's claims.  *Id.* at 1170.

## II. Department of Corrections' Procedures for Administrative Appeals

The California Department of Corrections and Rehabilitation ("CDCR") provides any inmate under its jurisdiction the right to appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Royal Dec. ¶ 2; Cal. Code Regs. ("CCR") tit. 15, § 3084.1(a).  To initiate an appeal, the inmate must submit a CDCR Form 602 describing the issue to be appealed and the relief requested to the appeals coordinator's office at the institution.  *Id.* § 3084.2(a)-(c).  CDCR's appeal process consists of three formal levels of appeal: (1) first formal level appeal filed with one of the institution's appeal coordinators, (2) second formal level appeal filed with the institution head or designee, and (3) third formal level appeal filed with the CDCR director or designee.  Royal Dec. ¶ 3; 15 CCR § 3084.7(a)-(c). A prisoner exhausts the appeal process when he or she completes the third level of review. *Id.* § 3084.7(d)(3); *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010).

## DISCUSSION

The defendants provide evidence that Cramer filed three administrative appeals relevant to his due process claim and argue that none of the appeals exhausted Cramer's administrative remedies.  Cramer does not dispute the defendants' evidence but argues that he exhausted his administrative remedies with Appeal No. 96-03332.  Although Cramer does not argue he exhausted his claim with the two other appeals defendants cite, the Court will review them to determine if the defendants have met their burden to prove lack of exhaustion.

## I. Appeal No. 96-03332

K. Royal is the appeals coordinator at Pelican Bay and has personal knowledge of the inmate administrative appeals process.  Royal Dec. ¶ 1.  Royal states the following in his declaration:  First and second level inmate appeals are received by the Inmate Appeals Office at

4

Pelican Bay and are handled by staff at Pelican Bay; third level appeals are received and decided by CDCR staff at the Office of Inmate Appeals in Sacramento, California. *Id.* ¶ 4. When an inmate appeal is received by the Pelican Bay Appeals Office, it is logged into the Inmate Appeals Tracking System ("IATS") computer database for Pelican Bay, which is maintained in the ordinary course of business. *Id.* ¶ 5.

Cramer's Appeal No. 96-03332 is no longer available in the IATS database because the standard business practice is to maintain documents from active appeals and once an appeal is resolved or is inactive, the documents are kept for two years and then purged. *Id.* ¶ 8. However, Cramer's Central File has documents pertaining to Appeal No. 96-03332 and Cramer submits a copy of this appeal with his opposition. *Id.*, Ex. A; Opp., Ex. E, ECF No. 35-2 at 28. The face of Appeal No. 96-03332 shows that Cramer submitted it to the prison on April 22, 1996, and it contained the following grievance:

> This 602 is in regards to the 115 hearing held on 4/10/96 by SHO Long concerning Log #B96-01-0051 where I was found guilty of "battery on an I/M with a weapon." I believe administration and SHO Long passed this severe finding of guilty impartially [sic] and without proper consideration to my due process rights and the evidence against me in their reports. I will attempt to point out several inconsistencies and faults from the hearing itself to the incomplete incident report that I received before the 115 hearing.

*Id.*

On a following page in the appeal, Cramer specified how he was denied due process at his 115 disciplinary hearing. ECF No. 35-2 at 30. Cramer submitted this appeal to the third level of review. Royal Dec., Ex. A, ECF Nos. 33-2 at 7-23; Opp., Ex. E, ECF Nos. 35-3 at 3-5.

Citing California regulations, the defendants argue that this appeal did not exhaust Cramer's administrative remedies for his due process claim because it did not mention anything about the "NS dropout" notation and, therefore, did not put the prison on notice of this claim.

Although a California inmate may administratively appeal any policy, decision, action or omission that has a material adverse effect on him or her, the inmate must "describe the specific issue under appeal and the relief requested." 15 CCR §§ 3084.1(a); 3084.2(a). Ninth Circuit

5

authority also requires an inmate appeal to alert the prison to the nature of the wrong for which redress is sought. *McCollum*, 647 F.3d at 876. Because Appeal No. 96-03332 made no mention of the "NS dropout" notation, it failed to put the prison on notice of any due process claim about it. Therefore, in relation to Appeal No. 96-03332, the defendants have met their burden of showing there was an administrative remedy available to exhaust the due process claim and that Cramer did not exhaust it.

Cramer argues Appeal No. 96-03332 exhausted his administrative remedies because it was appealed to the third and final level of review and "was the direct consequence of defendants' September 13, 1994 decision, action of entering fabricated, false confidential (NS) gang dropout classification of an unknown inmate into plaintiff's nonconfidential C-File," and this notation caused an inmate to attack Cramer in 1996. Cramer's theory is based on his speculation that someone who saw the "NS dropout" notation in his Central File assumed he was a NS snitch and this led to his attack by another inmate. He concludes that, because the defendants did not tell him about the "NS dropout" notation, his inability to include it in his 1996 appeal was caused by the defendants.

In effect, Cramer is arguing that no remedy was "available" to him when he submitted this appeal in 1996. Under the PLRA, an "available" remedy means a remedy that is "capable of use" to obtain "some relief for the action complained of." *Ross v. Blake*, 136 S.Ct. 1850, 1859 (2016). The Supreme Court has listed three types of situations where a remedy is unavailable: (1) when the procedures operate as a dead end—with officers unable or consistently unwilling to provide relief; (2) an administrative scheme so opaque it becomes, practically speaking, incapable of use; and (3) when prison administrators thwart inmates from using the grievance process through machination, misrepresentation, or intimidation. *Id.* at 1859-60.

Cramer's argument, that in 1996 an administrative remedy was unavailable to him because he was unaware of the due process violation, does not fall under any of the types of situations described in *Ross*. *Ross* described administrative procedures which made it difficult or impossible for an inmate to obtain a ruling on his grievance. The administrative procedures in

6

1996 did not make it difficult or impossible for Cramer to obtain a third-level decision on his grievance, evidenced by Cramer's submitting his appeal to the third level of review and obtaining a decision at that level. The unavailability envisioned by the PLRA does not include Cramer's argument that his violation could not be appealed because it was unknown to him. The California regulations provide for a situation like the one Cramer describes by allowing an appeal to be filed 30 days from the date the violation occurred or 30 days from the date the inmate became aware of it. *See* 15 CCR § 3084.8(b)(1)-(3).

Cramer speculates that the defendants, in 1994, purposefully placed the "NS dropout" notation in his Central File and released it to others so that he would be attacked by an inmate in 1996. Cramer also speculates that the defendants purposefully withheld the "NS dropout" notation from him because he received a 1995 128-G Chrono which did not contain the "NS dropout" notation and, in 2007, his defense attorney in an unrelated lawsuit, subpoenaed documents from the CDCR custodian of records and the 128-G Chrono with the "NS dropout" notation was not provided. However, to oppose an argument in a motion for summary judgment, the plaintiff must submit evidence; conclusory allegations or speculations are insufficient. *See Albino*, 747 F.3d at 1172 (plaintiff must come forward with evidence showing there is something in his particular case that made existing and generally available administrative remedies effectively unavailable to him). Cramer's speculations do not raise a genuine issue of material fact about whether the available exhaustion procedures were effectively unavailable to him.

Therefore, Cramer has failed to carry his burden of showing his claim was exhausted by Appeal No. 96-03332.

**II. 2015 Appeals**

 **A. Appeal No. 15-01055**

On April 29, 2015, Cramer filed 602 Appeal No. 15-01055, in which he requested the expungement from his Central File of references to his gang validation, including the "NS gang dropout reference." Royal Dec., Ex. B, ECF Nos 33-2 at 26-35. The appeal stated:

> Staff action of placing false gang info into my confidential file

7

> which was noted on a CDC form 128-G UCC Chrono dated 9/94 stating false (NS) gang dropout inference that contradicts IGI investigation conclusion of (NS) gang activity as well as the subsequent SSU/OCS, ICC & CSR decision to validate & retain appellant on indeterminate status as a (NS) gang member. Staff intentionally omitted/suppressed this false gang inference violating appellant's due process administratively as well as within petitions to the state and federal courts that challenged the gang validation decision.

ECF No. 33-2 at 28.

On May 1, 2015, Appeal No. 15-01055 was cancelled at the First Level of Review for untimeliness. *Id.*, ECF No. 33-2 at 25. The cancellation stated: "This appeal is cancelled due to exceeding allowable time constraints for appealing the documentation from 1994 regarding gang validation." *Id.* On June 5, 2015, Cramer appealed the cancellation of Appeal No. 15-01055 in Appeal No. 15-01362, but that appeal was cancelled at the third level of review as untimely because it was submitted more than 30 days after Cramer was notified of the cancellation of Appeal No. 15-01055. Royal Dec. ¶¶ 15, 17; Spaich Dec. ¶ 16, Ex. F.

The defendants argue that Appeal No. 15-01055 did not exhaust Cramer's administrative remedies on the due process claim because (1) the wording of this appeal did not put the prison on notice that Cramer was claiming his due process rights were violated by the "NS dropout" notation; and (2) the appeal was properly cancelled because it was untimely and Cramer never received a third level decision. The untimeliness argument is dispositive; therefore, the Court will only address this issue.

California regulations require an inmate to submit an appeal within 30 days of the occurrence of the event being appealed or upon first having knowledge of the action being appealed. 15 CCR § 3084.8(b)(1)-(3). The regulations allow an appeal to be cancelled if the time limits are exceeded. *Id.* § 3084.6(c)(4). A cancellation does not exhaust administrative remedies. *Id.* § 3084.1(b). The reason for the cancellation may be separately appealed. *Id.* § 3084.6(e). The original cancelled appeal will only be accepted again for review if it is determined that the cancellation was made in error or new information makes the appeal eligible for further review. *Id.* §§ 3084.6(a)(3), (e).

8

Appeal No. 15-01055 was cancelled as untimely because it was about an event that occurred in 1994 and it was submitted in 2015. Even viewing the facts in Cramer's favor and assuming he discovered the 1994 "NS dropout" notation in September 2014, Appeal No. 15-01055 was still untimely because Cramer submitted it on April 29, 2015, many months after he had knowledge of it. Although Cramer appealed the cancellation, he submitted the second appeal more than 30 days after he received notification of the original cancellation, so the second appeal was also cancelled as untimely.

### B. Appeal No. 15-02091

On August 13, 2015, Cramer filed Appeal No. 15-02091, in which he requested expungement of the false "gang dropout inference" from his Central File. Royal Dec., Ex. C, ECF Nos. 33-2 at 37-48. This appeal was cancelled at the second level of review for appealing duplicate issues and for exceeding the time constraints for the September 1994 "NS dropout" notation. Royal Dec. ¶ 11, Ex. C, ECF No. 33-2 at 41. Cramer appealed the cancellation of Appeal No. 15-02091 in Appeal No. 15-2263, which Cramer submitted to the third level of review. The third level decision determined that Appeal No. 15-02091 was properly cancelled. Spaich Dec. ¶ 20, Ex. G; ECF No. 33-4 at 40-41.

The defendants argue that Appeal No. 15-02091 did not exhaust Cramer's administrative remedies because it was cancelled at the second level of review for exceeding the time constraints. Even assuming Cramer became aware of the "NS dropout" notation in September 2014, Appeal No. 15-02091 would have been cancelled as untimely because it was submitted on August 13, 2015, almost one year after Cramer became aware of his claim. Although Cramer appealed the cancellation of Appeal No. 15- 02091 in Appeal No. 15-2263, the third level of review determined that the cancellation of Appeal No. 15-02091 was correct. Therefore, Appeal No. 15-02091 never received a third-level decision.

The defendants have met their burden of showing there was an available administrative remedy but Cramer did not exhaust it in his two 2015 appeals. Because Cramer does not argue that either of the 2015 appeals exhausted his administrative remedies, he has not met his burden

9

to come forward with evidence showing that there is something in his particular case that made the generally available administrative remedies effectively unavailable to him.

## CONCLUSION

Based on the above, the Court grants the motion for summary judgment based on failure to exhaust administrative remedies.  This order terminates docket numbers 33 and 37.  The Clerk of the Court shall enter a separate judgment and close the file.

**IT IS SO ORDERED.**

Dated: September 28, 2020

_____
VINCE CHHABRIA
United States District Judge